**McCARTY FARMS, INC., Alan Larson, Dale Skaalure, Viggo Anderson, Rasmussen Farming Corporation, et al., Plaintiffs,**

v.

**BURLINGTON NORTHERN, INC., a corporation, Defendant.**

**No. CV–80–103–GF.**

United States District Court, D. Montana, Great Falls Division.

March 24, 1992.

Michael J. Ogborn, Murray Ogborn, Harding & Ogborn, Denver, Colo., Stephen D. Bell, Dorsey & Whitney, Billings, Mont., John W. Manning, Dorsey & Whitney, Great Falls, Mont., for plaintiffs.

Douglas J. Babb, Burlington No. R. Co., Fort Worth, Tex., Charles Dearden, Burlington Northern Law Offices, Bruce R. Toole, Crowley, Haughey, Hanson, Toole & Deitrich, Billings, Mont., Betty Jo Christian, Samuel M. Sipe, Jr., Janice Barber, Steptoe & Johnson, Washington, D.C., for defendant.

Thodore Hirt, W. Scott Simpson, Dept. of Justice, Civil Div., Federal Programs Branch, Washington, D.C., for defendants/intervenors ICC & USA.

MEMORANDUM AND ORDER

HATFIELD, Chief Judge.

The present action is a class action prosecuted pursuant to section 10701(a) of Title

49 of the United States Code and former section 1(5) of the Interstate Commerce Act (49 U.S.C. § 1(5)). The class which the plaintiffs represent consists of all persons, partnerships or entities who, during the two-year period from September 12, 1978, to September 12, 1980, "grew, sold and shipped, or caused to be shipped by the defendant, Burlington Northern, Inc. ("Burlington Northern"), wheat in and from the State of Montana to Pacific Northwest coast terminals in the States of Oregon and Washington."[1] The plaintiffs seek monetary compensation, on their own behalf and in their representative capacity, from the Burlington Northern, alleging that entity charged them rates on freight shipments during the referenced two-year period that were unreasonably high, in violation of 49 U.S.C. § 10701(a). The plaintiffs invoke the jurisdiction of the court pursuant to 49 U.S.C. § 11705(c)(1) and 28 U.S.C. § 1337.

## I.

On March 16, 1981, the parties advised the court that they agreed the Interstate Commerce Commission possessed exclusive jurisdiction to determine the reasonableness of the freight charges placed in issue by the plaintiffs' complaint, as amended. Accordingly, the parties requested the court to refer the issue of the reasonableness of the freight charges to the Interstate Commerce Commission for determination. Because the reasonableness of the freight charges at issue presented a matter properly referred to the Interstate Commerce Commission under the doctrine of primary jurisdiction, the court granted the parties' request, and directed the plaintiffs to institute appropriate proceedings before the Interstate Commerce Commission. Pursuant to the court's directive, the plain-

tiffs filed an administrative complaint with the Interstate Commerce Commission on March 26, 1981. The plaintiffs' administrative complaint described the plaintiffs as persons or entities who "grow and sell grain and ship or cause to be shipped carload quantities of wheat and other grains over the line of the [Burlington Northern] from stations in Montana, of which Plentywood, Big Sandy, Great Falls, Hogeland, Chester and Reserve are representative, to Pacific Coast terminals in the States of Oregon and Washington."

The Interstate Commerce Commission issued a series of decisions in the administrative proceedings. In a May 22, 1987, decision, the Interstate Commerce Commission found that the Burlington Northern had possessed market dominance over the movement of wheat and barley from Montana to Pacific Northwest ports. *McCarty Farms v. Burlington Northern*, 3 I.C.C.2d 822 (1987). In a February 5, 1988, decision, the Commission determined the methodology to be used to assess the reasonableness of the rates for this traffic, and held that certain of the rates were unreasonable. 4 I.C.C.2d 262 (1988). On February 3, 1989, the Commission entered a decision for the declared purpose of providing the data and guidance necessary for the parties to determine the reasonableness of the challenged rates, to compute reparations, and to determine the maximum allowable rate level for the future. *McCarty Farms, Inc., et al., v. Burlington Northern, Inc.*, Docket Nos. 37809, 37809 (Sub–No. 1), *Montana Dept. of Commerce v. Burlington Northern, Inc.*, Docket No. 37815S.[2] On March 20, 1991, a decision was again entered wherein the Commission adopted the methodology utilized by Burlington Northern to calculate the amount of reparations and interest due the complainants,

---

1. The order certifying this action as a class action was entered by the court on March 16, 1981.

2. *Montana Dept. of Commerce v. Burlington Northern, Inc.*, Docket No. 37815 (1989), was an administrative action instituted by the Montana Department of Agriculture and the Montana Wheat Research and Marketing Committee. The complaint in that action challenged rates

charged by the Burlington Northern upon single car, multiple-car, and trainload shipments of wheat and barley moving from Montana points of origin to Portland and Seattle. On July 30, 1982, the Interstate Commerce Commission consolidated proceedings upon the administrative complaint of the State of Montana agencies with proceedings upon the administrative complaint of the plaintiffs in this action.

and determined future rate prescriptions.[3] Finally, on November 20, 1991, the Interstate Commerce Commission entered a decision confirming that the reparations and interest owed the complainants through July 1, 1991, totalled $16,559,012. In this latest decision, the Interstate Commerce Commission also vacated the rate prescription aspect of the March 20, 1991, decision.[4]

On the occasion of each referenced decision, both the plaintiffs and Burlington Northern have petitioned the court to review, pursuant to 28 U.S.C. § 1336(b), the Interstate Commerce Commission's decision resolving any rate issue which was the subject of this court's order of referral of March 16, 1981. The parties agree this court has exclusive jurisdiction, pursuant to 28 U.S.C. § 1336(b), to review those aspects of the decisions which pertain to the reasonableness of the "referred" rates. However, the parties do not agree upon the scope of the court's referral order and, accordingly, the scope of this court's review of the referenced decisions entered by the Interstate Commerce Commission in *McCarty Farms, Inc., et al. v. Burlington Northern, Inc.*, Dockets Nos. 37809, 37809 (Sub–No. 1), and *Montana Dept. of Commerce v. Burlington Northern, Inc.*, No. 37815S (1989).

The Burlington Northern resists what it characterizes as an attempt by plaintiffs to obtain review in this court of those rate issues resolved by the Interstate Commerce Commission in the referenced decisions, which were not encompassed by the complaint in this action. The Burlington Northern asserts, in essence, that the jurisdiction of this court to review the decision of the Interstate Commerce Commission, under 28 U.S.C. § 1336(b), is limited to the specific rate reasonableness issues referred to the Interstate Commerce Commission by the order of referral entered in 1981. Jurisdiction to review all other aspects of those decisions to the extent they address rate reasonableness issues which were not the subject of the plaintiffs' amended complaint, Burlington Northern submits, lies exclusively in the court of appeals pursuant to 28 U.S.C. §§ 2321(a) and 2342(5).[5] Accordingly, the Burlington Northern moves the court to dismiss those aspects of plaintiffs' petition for review which go to issues beyond the scope of the plaintiffs' complaint and, necessarily, the scope of the court's order of referral.[6]

**3.** The Interstate Commerce Commission calculated the Burlington Northern owes reparations on trainload traffic that occurred from 1981 through 1986 in the total amount of $9,685,919.00, plus interest, and specified a formula for calculating any additional reparations for subsequent years. Pursuant to the directive of the Commission, the Burlington Northern advised the court, on June 25, 1991, that Burlington Northern calculated the reparations and interest through July 1, 1991, in the total amount of $16,559,012.

**4.** The Interstate Commerce Commission also found that no reparations were owing on single-car movements of wheat from September, 1978, to September, 1980.

**5.** 28 U.S.C. § 2321(a) provides:

Except as otherwise provided by an Act of Congress, a proceeding to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Interstate Commerce Commission, shall be brought in the court of appeals as provided by and in the manner prescribed in Chapter 158 of this Title.

28 U.S.C. § 2342(5), in turn, provides in pertinent part:

The court of appeals ... has exclusive jurisdiction to enjoin, set aside, suspend, in whole or in part, or to determine the validity of ... all rules, regulations, or final orders of the Interstate Commerce Commission made reviewable by section 2321 of this Title....

**6.** The Interstate Commerce Commission and United States of America have intervened in this action and have likewise requested the court to "limit" its review to those portions of the Interstate Commerce Commission's decisions that resolve the issues raised in the plaintiffs' complaint, as amended. The intervenors also request the court to stay proceedings in this matter. In that regard, the court notes both of the principal parties have filed petitions for review in the United States Court of Appeals for the District of Columbia Circuit, seeking judicial review of those aspects of the Interstate Commerce Commission's decisions not within the scope of the plaintiffs' amended complaint. The intervenors suggest it would be more expedient, from the standpoint of judicial economy, to have the District of Columbia Circuit, which possess extensive experience in reviewing decisions of the Interstate Commerce Commission, accomplish its review first.

In pressing the court to reject plaintiffs' attempt to expand the court's post-referral review to issues which were not embodied in the court's 1981 referral order, Burlington Northern emphasizes the result is dictated by the "arising out of" provision of 28 U.S.C. § 1336(b). The same result is also compelled, Burlington Northern submits, by section 214(c)(5), of the Staggers Rail Act, P.L. 96–448, 94 Stat. 1915 (1980) (codified at 49 U.S.C. § 10501(d)), which, in the opinion of Burlington Northern, grants the Interstate Commerce Commission exclusive jurisdiction over complaints challenging the reasonableness of rail rates in effect after October 1, 1980. Viewing the court's 1981 order of referral as limited to the reasonableness of single-car wheat rates on movements from September 12, 1978, through September 12, 1980, the Burlington Northern asks the court to dismiss all aspects of the plaintiffs' petitions for review which exceed the scope of the referral order. Specifically, the Burlington Northern seeks to preclude review of the Interstate Commerce Commission's determinations as to the reasonableness of: (1) single-car, multiple-car, and trainload rates on wheat from September 12, 1980 forward and for the future; and (2) single-car, multiple-car, and trainload rates on barley from the date the plaintiffs filed their administrative complaint before the Interstate Commerce Commission forward and for the future.[7]

In response to Burlington Northern's motion to dismiss, the plaintiffs argue that this court is the only court which has jurisdiction to review all aspects of the Interstate Commerce Commission's decisions. In the opinion of the plaintiffs, the decisions of the Interstate Commerce Commission, in their entirety, "arose out of" the 1981 referral order. The plaintiffs claim Burlington Northern's interpretation of the scope of the referral order blatantly disregards the actual intent of both this court and the parties in referring the case to the Interstate Commerce Commission. As to Burlington Northern's argument that the Staggers Rail Act of 1980 was intended by Congress to eliminate concurrent jurisdiction for a challenge to the reasonableness of the rail rates under 49 U.S.C. § 11705(c)(1), plaintiffs assert the argument is "patently" without merit, having no support in the federal decisional law.[8]

The determinative issue presented is whether or not this court has jurisdiction, under 28 U.S.C. § 1336(b), to review the Interstate Commerce Commission's decision of February 21, 1989, and subsequent

---

7. The original complaint in this case was filed September 11, 1980. The plaintiffs filed an amended complaint on January 29, 1981, that added an allegation that Burlington Northern had "market dominance" within the meaning of 49 U.S.C. § 10709 during the pertinent period of time. Plaintiffs filed a second amended complaint on March 23, 1981, for the limited purpose of joining an additional party plaintiff.

8. Subsequent to the Interstate Commerce Commission's decision of February 5, 1988, the plaintiffs, on March 3, 1988, filed a myriad of motions: (1) motion requesting the court to "clarify" the 1981 order of referral to the Interstate Commerce Commission; (2) motion requesting leave of court to file a third amended complaint; and (3) a motion requesting the court to amend the definition of the class. On April 18, 1991, the plaintiffs filed "revised" motions for the purpose of conforming the "class" definition to the March 27, 1991, decision of the Interstate Commerce Commission. The court views the propriety of the referenced motions to hinge on the outcome of the jurisdictional issues presented by the parties in relation to the Bur- lington Northern's motion requesting the court to dismiss certain aspects of the plaintiffs' petition for review of the Interstate Commerce Commission's order of February 21, 1989.

The allowance of leave to amend the definition of a class in a class action certified pursuant to Fed.R.Civ.P. 23 presents a matter vested in the discretion of the trial court. *See, Kilgo v. Bowman Transport, Inc.*, 789 F.2d 859 (11th Cir.1986). Absent a showing of prejudice to an adverse party, leave to amend is appropriately granted. *Id.* The Burlington Northern does not claim it would be prejudiced if the requested amendment is allowed. Rather, the Burlington Northern resists the plaintiffs' motion as a futile attempt to have this court exercise jurisdiction over rail rates in effect after the enactment of the Staggers Rail Act, 49 U.S.C. § 10501(d), which, in the opinion of the Burlington Northern, divested the district courts of jurisdiction over challenges to the reasonableness of rail rates. *See, Smith v. Commanding Officer, Air Force Accounting and Finance Center*, 555 F.2d 234, 235 (9th Cir.1977) (*per curiam*) (amendment that is incapable of conferring jurisdiction must be rejected).

related decisions, in their entirety. Resolution of this jurisdictional issue requires the court to address the correlative issue of whether the Staggers Rail Act, specifically section 214(c) (49 U.S.C. § 10501(d)), was intended by Congress to eliminate the concurrent jurisdiction vested in federal district courts under 49 U.S.C. § 11705(c)(1) to entertain challenges to the reasonableness of rail rates.

## II.

The decisions of the Interstate Commerce Commission at issue involved rulings on the reasonableness of rates charged by the Burlington Northern for single-car, multiple-car, and trainload quantities of wheat and barley, shipped from locations in the State of Montana to Pacific coast terminals in the States of Oregon and Washington from September 12, 1978, to the date of the Interstate Commerce Commission's decision and into the future. The decisions emanated from three consolidated actions before the Interstate Commerce Commission. Two of the actions were created in response to an administrative complaint filed by the plaintiffs, which challenged the reasonableness of rates charged by the defendant upon export shipments of wheat and "other grains" from points in the State of Montana to Pacific coast terminals in the States of Oregon and Washington. *McCarty Farms, Inc., et al. v. Burlington Northern, Inc.*, No. 37809.

After an initial decision was entered in No. 37809, and the record closed, the Commission entered an order on July 21, 1982, for the declared purposes of: (1) reopening the record in proceeding No. 37809; (2) initiating a separate proceeding, *McCarty Farms, Inc. v. Burlington Northern R.R. Co.*, No. 37809 (Sub–No. 1), to consider separately, the reasonableness of the barley rates discussed in the initial decision entered by the Commission in proceeding No. 37809; (3) consolidating proceedings Nos. 37809 and 37809 (Sub–No. 1) with an administrative proceeding instituted by the Montana Department of Agriculture and the Montana Wheat Research and Marketing Committee, designated *Montana Department of Agriculture, et al. v. Burlington Northern, Inc.*, No. 37815S, wherein the Montana agencies sought a determination of the maximum rates which could be charged by the Burlington Northern in the future for shipments of both barley and wheat from Montana points of origin to Pacific coast terminals by way of single-car, multiple-car, or trainload shipments.[9] The third of the consolidated actions is, of course, the action referred to in the Commission's order of July 21, 1982, *i.e.*, *Montana Department of Agriculture, et al. v. Burlington Northern, Inc.*, No. 37815S.

In resisting the plaintiffs' attempt to gain review of the decisions of the Interstate Commerce Commission in their entirety, the Burlington Northern argues the re-

9. For background purposes, the court sets forth verbatim the reasons espoused by the Interstate Commerce Commission for its action encompassed in the July 21, 1982, order:

In No. 37809, complainants filed a class action suit in U.S. District Court, alleging that rates assessed [by the Burlington Northern] on wheat and other grains from points in Montana to Pacific coast terminals in Oregon and Washington are unreasonably high. The suit was referred to the Commission for resolution of certain issues, including maximum reasonableness of rates for wheat....

When the complaint in No. 37809 was filed with the Commission, it added allegations of unreasonableness of rates for barley. [The Burlington Northern] argues, and complainants agree, that the barley rates are not at issue in the court suit. Complainants argue that both barley and wheat rates should be considered together, since filing a separate complaint at this Commission would be a duplication of efforts. It is true that the same tariff is involved, the origins are the same (within the State of Montana), and the destinations involve the same ports in Washington and Oregon. Nevertheless, there are two important differences which require a separate proceeding. First, the court referral case is a class action suit on behalf of all Montana wheat producers and shippers. Because the Commission's rules do not permit class action suits, the complainants for the barley rates are not a class of shippers, but only those parties specifically named in the complaint. Second, the findings on wheat in No. 37809 are recommendations to the court; the findings as to barley will result in a binding Commission order. Accordingly, two separate proceedings are warranted. The complaint filed in No. 37809 is sufficient to institute No. 37809 (Sub–No. 1) (footnote omitted).

ferral made by this court in 1981 to the Interstate Commerce Commission was limited to a determination of the reasonableness of rates charged by the Burlington Northern for "single-car" shipments of wheat from September 12, 1978, through September 12, 1980. As noted, the plaintiffs dispute the Burlington Northern's limited reading of the referral order.

The court's referral order did not precisely specify the freight rates referred to the Interstate Commerce Commission, but simply established the scope of the referral, stating the referral was for a "determination of the reasonableness of the freight charges referred to in paragraphs Sixteen, Seventeen, Eighteen and Nineteen of the Amended Complaint...." Paragraph Sixteen of the Amended Complaint, in turn, alleged: "Plaintiffs and members of the class have sold and shipped or caused to be shipped large amounts of wheat in carload quantities to the Pacific Coast terminals during the past two years on which the freight charges of the defendant have been deducted and withheld...." Paragraphs Seventeen, Eighteen and Nineteen of the Amended Complaint generally allege that the Burlington Northern "has" charged unreasonable rates, enjoyed market dom-

inance, and that the plaintiffs "have been" subjected to unreasonable rates.[10]

The jurisdiction of this court to review any aspect of the decisions of the Interstate Commerce Commission is found in 28 U.S.C. § 1336(b), which provides:

> When a district court ... refers a question or issue to the Interstate Commerce Commission for determination, the court which referred the question or issue shall have exclusive jurisdiction of a civil action to enforce, enjoin, set aside, annul, or suspend, in whole or in part, any order of the Interstate Commerce Commission arising out of such referral.

Consequently, the scope of the court's jurisdiction to review the Interstate Commerce Commission's decisions is determined by the scope of the referral order itself. *See, e.g., Leonard Bros. Trucking Co. v. United States*, 301 F.Supp. 893, 898 (S.D.Fla.1969); *see also, Seabord S.R. Inc. v. United States*, 794 F.2d 635 (11th Cir. 1986). Unless the "arising out of" provision is satisfied, jurisdiction to review an order of the Interstate Commerce Commission lies, not in the referring court, but in the appropriate court of appeals pursuant to 28 U.S.C. §§ 2321 and 2342.[11]

The order of referral obviously speaks for itself. The order simply incorporated,

10. In the interest of providing a complete background, the text of paragraphs Seventeen, Eighteen and Nineteen of the Amended Complaint are set forth in their entirety:

> Seventeen. At all times relevant hereto, [the Burlington Northern] has, in violation of Title 49 U.S.C. § 10701(a) and former section 1(5) of the Interstate Commerce Act (49 U.S.C. § 1(5)), charged rates on shipments of grain shipped or caused to be shipped by plaintiffs and members of the class at unreasonably high rates.
> Eighteen. At all times relevant hereto, defendant has enjoyed, within the definition of 49 U.S.C. § 10709, marked dominance over the transportation to which the rates described in paragraph Seventeen apply.
> Nineteen. Plaintiffs have been subjected to the payment of rates and charges for transportation which were, when exacted, and still are, unjust and unreasonable in violation of Title 49, U.S.C. § 10701(a) and former section 1(5) of the Interstate Commerce Act.

11. The Burlington Northern has filed a petition in the Circuit Court of Appeals for the District

of Columbia, seeking review of those rate issues resolved by the Interstate Commerce Commission's decision that were not presented in the plaintiffs' complaint, as amended, and, hence, were not included in the court's order of referral. *Burlington Northern R.R. Co. v. I.C.C.*, No. 88–1114 (filed Feb. 16, 1988); *Burlington Northern R.R. Co. v. I.C.C.*, No. 89–1149 (filed Mar. 2, 1989). The plaintiffs, likewise, filed "protective" appeals of the Interstate Commerce Commission's decisions in the United States Circuit Court of Appeals for the District of Columbia. It is imperative to note that the parties concede the United States Circuit Court of Appeals for the District of Columbia has exclusive jurisdiction to review the February 3, 1989, decision of the Interstate Commerce Commission as to the rate challenged before the Interstate Commerce Commission by the Montana Department of Commerce. On November 25, 1991, the Circuit Court of the District of Columbia lifted a stay order that had been entered in August of 1980, and directed that proceedings upon the petition for review of the Interstate Commerce Commission decision in the *McCarty Farm* administrative proceedings would proceed.

by reference, the operative allegations of the plaintiffs' complaint. Contrary to the assertion of the plaintiffs, their complaint, as amended, challenged only those rates in existence during the period from September 12, 1978, to September 12, 1980, for single-car quantities of wheat shipped from points of origin in Montana to terminals on the Pacific Northwest Coast. The complaint did not present a challenge to the other various rates ultimately placed in issue by the administrative complaints presented by the plaintiffs to the Interstate Commerce Commission for resolution, and resolved by the orders at issue.

The issue arises, however, whether the review jurisdiction of the court under section 1336(b) is determined and limited by the order of referral, or whether other considerations, such as development in the administrative proceedings instituted as a result of the referral, define the scope of the referring court's jurisdiction upon review. The plaintiffs suggest the intention of the parties and the court in referring the issues to the Interstate Commerce Commission and the scope of the proceedings instituted as a result of the referral, define the scope of this court's review jurisdiction under 28 U.S.C. § 1336(b). Plaintiffs vehemently assert the administrative complaint they filed in response to the court's order of referral effects the intention of the parties, as well as the court, regarding the rate issues presented to the Interstate Commerce Commission under the doctrine of primary jurisdiction.

If, as the Burlington Northern contends, the decisions of the Interstate Commerce Commission can be considered to have "arisen" out of the referral from the district court only to the extent the decisions address a rate expressly identified in the order of referral by commodity, class of service, and dates of service, then the jurisdiction of this court would be limited to the reasonableness of the freight rates charged by the Burlington Northern to transport wheat from points in Montana to ports on the Pacific Northwest Coast for export, between September 12, 1978, and September 12, 1980. Contrary to the assertion of the plaintiffs, the express language of the court's order of referral cannot be read to have encompassed single-car, multiple-car, and trainload rates assessed by the Burlington Northern on shipments of wheat which occurred from September 12, 1980, forward and for the future, nor on single-car, multiple-car, and trainload rates on barley from March 26, 1981, the date plaintiffs filed their administrative complaint, forward, and for the future. The language of the referral order itself aside, the plaintiffs suggest the intention of the parties and the court should be ascertained, not only from the language of the referral order, but also from the administrative complaint filed pursuant to the mandate of the referral order as well as subsequent to developments before the Interstate Commerce Commission.[12]

---

**12.** Plaintiffs press the argument that the Burlington Northern attempts to limit the scope of review of this court in order to evade its potential liability for damages to the plaintiff class as a result of the decision of the Interstate Commerce Commission. Plaintiffs suggest that because no class action mechanism exists for complaints filed before the Interstate Commerce Commission, the plaintiffs would not be able to recover reparations on behalf of a class on the multiple-car and trainload quantity rates which were the subject of the Interstate Commerce Commission's decisions of May 22, 1987, February 5, 1988, and February 3, 1989.

In response, the Burlington Northern emphasizes that the Interstate Commerce Commission's orders contemplate the possibility of reparations awards based on the total volume of the traffic placed in issue by the administrative complaints of the plaintiffs and the Montana Department of Commerce, including multiple-car and trainload traffic put specifically in issue by the administrative complaint of the Montana Department of Commerce. The Burlington Northern contemplates that any award of reparations made by the Interstate Commerce Commission would be based on the total volume of the traffic placed in issue by these referenced administrative complaints and not simply on shipments by individual complainants. The Interstate Commerce Commission's practice, the Burlington Northern submits, permits the award of reparations to a group of shippers. *See, e.g., Ott Coal Co. v. Ann Arbor,* 253 I.C.C. 677, 681 (1942) (*citing, A.J. Phillips Co. v. Grand Trunk Western Ry.,* 236 U.S. 662, 35 S.Ct. 444, 59 L.Ed. 774 (1915)). Burlington Northern reiterates that its position is simply directed at the jurisdictional aspects of the judicial review of the Interstate Commerce Commission's decisions.

The Burlington Northern, of course, contests the legitimacy of the plaintiffs' argument, finding particular significance in the fact the plaintiffs did not timely move to amend their pleadings before this court for the purpose of challenging rates upon multiple-car and trainload service instituted by the Burlington Northern in December, 1980, and January, 1981, respectively, to a point in time prior to this court's entry of the stay and concomitant issuance of the referral order. Granted, the more prudent and most expeditious course the plaintiffs could have taken would have been to timely seek leave to amend their pleadings to expressly include the variety of rates they now contend were intended to be included in the order of referral. Nonetheless, the untimeliness of the plaintiffs' request is not determinative of whether the plaintiffs should be allowed to amend the pleadings in the present case to conform to the rate issues ultimately resolved in the administrative proceedings before the Interstate Commerce Commission.

It is well established in this circuit that delay, by itself, does not provide sufficient justification for denial of leave to amend. The propriety of granting leave to amend pleadings is a matter vested in the sound discretion of the trial court. *See, Mende v. Dun & Bradstreet, Inc.*, 670 F.2d 129, 131 (9th Cir.1982); *Jordan v. County of Los Angeles*, 669 F.2d 1311 (9th Cir.1982), *vacated on other grounds*, 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982). In exercising this discretion, a court is to be guided by the underlying purpose of Fed.R.Civ.P.

15—to facilitate decision on the merits, rather than on the pleadings or technicalities. *Id., citing, Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Accordingly, leave to amend shall be freely given when justice so requires. *See, e.g., Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 765 (9th Cir.1986). The most common reasons that justify denying leave to amend are undue prejudice to the adverse party, undue delay, bad faith, and futility of the proposed amendment. *See, Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987); *Mende v. Dun & Bradstreet, Inc.*, 670 F.2d at 131; *see also, Tamari v. Bache & Co. (Lebanon)*, 838 F.2d 904 (7th Cir. 1988). These identified factors, however, are not of equal weight in that delay, by itself, is insufficient to justify denial of leave to amend. *D.C.D. Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987) *(citing, United States v. Webb*, 655 F.2d 977 (9th Cir.1981)). In *Webb*, the court stated:

Specifically, we note that delay alone—no matter how lengthy—is an insufficient ground for denial of leave to amend. Only where prejudice is shown or the movant acts in bad faith are the courts protecting the judicial system or other litigants when they deny leave to amend a pleading. (citation omitted). The mere fact that an amendment is of-

In its February 3, 1989, decision, the Interstate Commerce Commission directed the Burlington Northern to compute a "proposed quantification of reparations" that complied with the Commission's decision, and submit its computations to the Commission within 90 days. The Interstate Commerce Commission entered its decision on March 20, 1991, wherein it calculated the amount of reparations and determined the future rate prescription procedure. The calculation of reparations included all traffic placed in issue by the three administrative complaints. Specifically, reparations were computed by the Interstate Commerce Commission for the various rates charged by Burlington Northern for all export movements of wheat and barley from points in the State of Montana to the Pacific Northwest from September of 1978

to the date the Commission entered its order on March 20, 1991. The Commission also directed the Burlington Northern to compute the reparations due upon the same traffic from 1986 forward and to notify this court and the Commission on or before June 25, 1991, as to the total amount of reparations and interest due as of that date. Consequently, the calculation of reparations undertaken by the Interstate Commerce Commission applies to all issue traffic during the stated time frame and is not limited to shipments of the complainants. The force of the plaintiffs' argument imploring the court to reject Burlington Northern's position as an attempt to evade its liability clearly wanes in the face of the Interstate Commerce Commission's decision.

fered late in the case is ... not enough to bar it. (citation omitted).

The other factors properly considered in determining whether a party should be denied leave to amend, with the exception of futility, are of no particular significance in the present case.

The Burlington Northern does not suggest, nor is there any indication, that the amendments sought by the plaintiffs are pursued in bad faith. Likewise, the Burlington Northern does not suggest that judicial review of the additional rate issues by this court, as opposed to the United States Circuit Court of Appeals for the District of Columbia, would unduly prejudice the Burlington Northern. Consequently, the factor of import is whether or not the proposed amendment would prove futile because of a limitation imposed by the Staggers Rail Act of 1980, 49 U.S.C. § 10501(d). As previously noted, the Burlington Northern assuredly argues the Staggers Rail Act divested the district courts of jurisdiction over rail rate reasonableness cases. This court cannot, Burlington Northern argues, obtain jurisdiction over challenges to rail rates in effect on or after October 1, 1980, by retroactively modifying the order of referral.[13]

### III.

■■■ The Burlington Northern interprets 49 U.S.C. § 10501(d) as expressly vesting exclusive jurisdiction over rail rate controversies arising after October 1, 1980, with the Interstate Commerce Commission.[14] In its opinion, this court is simply without jurisdiction over post-Staggers' challenges to rail rates. Because the court would not have had jurisdiction in the first instance to adjudicate disputes over rail rates in use after the effective date of the Staggers' Rail Act, the Burlington Northern asserts the court cannot now "acquire" jurisdiction by retroactive amendment of the referral order.[15] Burlington Northern argues that the plain language of section 10501(d) stands as the principal authority for the proposition that the statute vests the Interstate Commerce Commission with exclusive jurisdiction over rail rates. The Burlington Northern presses the court to recognize that it is bound to give effect to the literal meaning of section 10501(d) without consulting other indicia of intent or meaning.[16] The plaintiffs, of course, take issue with the Burlington Northern's conclusion.

Characterizing the Burlington Northern's construction of section 10501(d) as "novel", the plaintiffs argue the Staggers Rail Act did not eliminate the concurrent jurisdiction vested in the federal district courts by 49 U.S.C. § 11705(c)(1) to adjudicate challenges to rail rates.[17] The plain-

---

**13.** Section 229 of the Staggers Rail Act, *see,* 49 U.S.C. § 10701a Note, provided that rail rates in effect on the Act's effective date of October 1, 1980, that had not been previously challenged, would have to be challenged within the 180–day period following October 1, 1980. Section 214 of the Act (49 U.S.C. § 10501(d)), imposed the same jurisdictional limitation on challenges to rail rates which became effective after October 1, 1980.

**14.** The Interstate Commerce Commission agrees with the interpretation of section 10501(d) offered by the Burlington Northern.

**15.** In that vein, the Burlington Northern emphasizes the tariffs upon multiple-car and trainload rates on wheat and barley challenged by the plaintiffs before the Interstate Commerce Commission, were not established until after the October 1, 1980, effective date of the Staggers Rail Act.

**16.** The Burlington Northern also asserts that the intent of Congress to vest the Interstate Commerce Commission with exclusive jurisdiction to determine the reasonableness of rail rates is evidenced by its enactment of section 229 of the Staggers Rail Act (49 U.S.C. § 10701a). Section 229 expressly provided that any challenge to the reasonableness of rates in effect on the effective date of the Staggers Rail Act (October 1, 1980) would have to be challenged within the 180–day period following the effective date of the Act, or the rate would conclusively be deemed lawful. Burlington Northern interprets section 229 to mean that a post-Staggers challenge to the reasonableness of rates in effect on October 1, 1980, could not have been brought in federal district court.

**17.** 49 U.S.C. § 11705(c)(1) (formerly 49 U.S.C. § 9) provides in pertinent part:

A person may file a complaint with the Commission under section 11701(b) of this Title, or bring a civil action under subsection (b)(1) or (2) of this section to enforce liability against a common carrier providing transpor-

tiffs suggest that if Congress had indeed intended to eliminate the jurisdictional grant embodied in 49 U.S.C. § 11705, it would have done so expressly. Section 10501(d), the plaintiffs submit, is properly interpreted as having established the exclusiveness of the remedies provided by the Interstate Commerce Act. Section 10501(d) should not, plaintiffs argue, be interpreted to mean, as the Burlington Northern would have the court conclude, that the statute is jurisdictional over the remedies available under the Interstate Commerce Act. In the plaintiffs opinion, the right of an aggrieved party to pursue the remedy afforded by section 11705(c)(1), via an original action in district court, remains viable.[18]

The court begins its analysis cognizant of the elementary canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985); *Consumer Products Safety Comm. v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Products Safety Comm.*, 447 U.S. at 108, 100 S.Ct. at 2056. This well established canon is qualified by the term "ordinarily", since the "ascertainment of the meaning apparent on the face of a single statute need not end the inquiry. (citation omitted). This is because the plain-meaning rule is 'rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists.' (citation omitted). The circumstances of the enactment of particular legislation may persuade a court that Congress did not intend words of common meaning to have their literal effect." (citations omitted). *Watt v. Alaska*, 451 U.S. 259, 266, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981).

Burlington Northern's position, which relies upon the plain language of section 10501(d), is compelling. However, in attempting to discern the intent of Congress in its enactment of section 10501(d), the court must give due consideration to the fact Congress did not expressly repeal 49 U.S.C. § 11705(c), which on its face, provides for concurrent jurisdiction of the district courts and the Interstate Commerce Commission to entertain complaints regarding rail rates. Because the situation presented is akin to that addressed by the Supreme Court in *Watt*, the analysis employed by the Court is instructive in resolving the issue of statutory construction presented in this case. Faced in *Watt* with a situation where two statutes, each of which by its literal term applied to the facts of the case, the Court declined to simply read the statutes as being in irreconcilable conflict without seeking to ascertain the actual intent of Congress. 451 U.S. at 266, 101 S.Ct. at 1678. The Court endeavored to "read the statutes to give effect to each if we can do so while preserving their sense and purpose." (citations omitted). 451 U.S. at 267, 101 S.Ct. at 1678. The Court's tact was, of course, consistent with its duty: "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective. 'When there are two acts upon the same subject, the rule is to give effect to both if possible ... the intention of the legislature to repeal must be clear and manifest.'" (citation omitted). *Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). In ascertaining the intention of Congress with respect to its enactment of two acts upon the same subject, the court must bear in mind that

---

tation subject to the jurisdiction of the Commission....

**18.** The plaintiffs acknowledge the doctrine of "primary" jurisdiction, *see, Interstate Commerce Commission v. Atlantic Coastline Ry. Co.*, 383 U.S. 576, 579, 86 S.Ct. 1000, 1003, 16 L.Ed.2d

109 (1966), would require a district court to refer an action prosecuted under section 11705(c)(1) to the Interstate Commerce Commission. The plaintiffs hasten to note, however, that this mandate does not operate to eliminate jurisdiction at the district court level.

"where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Morton v. Mancari,* 417 U.S. at 550–51, 94 S.Ct. at 2483, *citing, Bulova Watch Co. v. United States,* 365 U.S. 753, 758, 81 S.Ct. 864, 867, 6 L.Ed.2d 72 (1961); *Rodgers v. United States,* 185 U.S. 83, 87–89, 22 S.Ct. 582, 583–84, 46 L.Ed. 816 (1902).

The legislative history attendant to the enactment of the Staggers Rail Act as it bears upon the question of the Interstate Commerce Commission's jurisdiction is sparse. The only specific discussion of the jurisdictional aspect of the Act, codified at 49 U.S.C. § 10501(d), appears in the Conference Committee Report. Both parties view the legislative history as supportive of their position. The Report, referring to the amendment presented by Congressman Staggers on September 4, 1980, states in pertinent part:

> Finally, [the House Amendment] amends section 10501 by adding a new paragraph providing that the jurisdiction of the Commission ... over rail transportation, as well as the remedies provided with respect to rail rates, classifications, rules and practices are exclusive....
> The remedies available against rail carriers with respect to rail rates, classifications, rules and practices are exclusively those provided in the Interstate Commerce Act, as amended, and any other federal statutes which are not inconsistent with the Interstate Commerce Act. No state law or federal or state common law remedies are available. H.R. 1430, 96th Cong., 2d Sess. 106 (1980), *reprinted in* 126 CONG.REC. 27889 (1980).

The legislative history referenced by the parties essentially adds nothing to the literal language of the statute itself. Consequently, the plaintiffs point to no per-

suasive evidence that Congress did not intend the words utilized in section 10501(d) to be understood in their literal sense. Accordingly, the intent of section 10501(d) must be ascertained from the language of the statute itself. That language establishes that Congress intended to vest exclusive jurisdiction over all aspects of transportation by rail carriers, including rates, within the exclusive jurisdiction of the Interstate Commerce Commission.[19] Section 10501(d) did, contrary to the assertion of the plaintiffs, divest this court of jurisdiction over challenges to the reasonableness of rail rates in effect on or after the effective date of the Staggers Rail Act, *i.e.,* October 1, 1980. Because the court would not have had jurisdiction to entertain the challenges advanced by the plaintiffs to rail rates in effect as of October 1, 1980, the court cannot acquire jurisdiction by retroactive amendment of the order of referral.

Therefore, for the reasons set forth herein,

IT IS HEREBY ORDERED that the plaintiffs' motion requesting leave to file a third amended complaint, and the related motions of the plaintiffs requesting clarification of the order of referral and requesting leave of court to amend the class definition, be, and the same hereby are, DENIED.

IT IS FURTHER ORDERED that the motion of the defendant, Burlington Northern Railroad Company, requesting the court to dismiss those aspects of the plaintiffs' petitions for review which exceed the scope of this court's order of referral be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the undersigned hereby certifies that in accordance with 28 U.S.C. § 1292, the jurisdictional issue addressed and resolved in the present Memorandum and Order involves a controlling question of law as to which

---

**19.** The plaintiffs cite *G. & T. Terminal Packaging Co. v. Consolidated Rail Corp.,* 830 F.2d 1230 (3rd Cir.1987), *cert. denied,* 485 U.S. 988, 108 S.Ct. 1291, 99 L.Ed.2d 501 (1988), as supporting the interpretation of section 10501(d) offered by the plaintiffs. The court in *G. & T. Terminal,* however, did not address the issue of whether Congress, through its enactment of section 10501(d), intended to vest the Interstate Commerce Commission with exclusive jurisdiction to resolve challenges to rail rates. Rather, the court held that the remedies provided by the Interstate Commerce Act were exclusive and operated to preempt common law remedies. 830 F.2d at 1234.

there is substantial ground for difference of opinion and that an immediate appeal from the present order may materially advance the ultimate termination of this litigation. The undersigned is of the opinion that timely resolution of the jurisdictional issue presented will foster judicial economy as well as promote the expeditious and efficient resolution of this controversy in its entirety.

Finally, IT IS HEREBY ORDERED that the parties shall, within fifteen (15) days of the date hereof, file a memorandum advising the court of their position regarding the propriety of this court staying further proceedings in this matter or, in the alternative, proceeding to exercise its review jurisdiction under 28 U.S.C. § 1336(b).